SO ORDERED,

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: July 5, 2016**

**The Order of the Court is set forth below. The docket reflects the date entered.**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE:**

**KITCHENS BROTHERS MANUFACTURING**
**COMPANY,**
                                                                            **CASE NO. 13-01710-NPO**

    **DEBTOR.**
                                                                            **CHAPTER 11**

**KITCHENS BROTHERS MANUFACTURING**
**COMPANY**
                                                                            **PLAINTIFF**

**VS.**
                                                                            **ADV. PROC. NO. 16-00008-NPO**

**FIRST TENNESSE BANK**
**NATIONAL ASSOCIATION**
                                                                            **DEFENDANT**

### MEMORANDUM OPINION AND ORDER GRANTING MOTION
### TO DISMISS AND CONSOLIDATING AND DISMISSING AMENDED OBJECTION

This matter came before the Court for hearing on May 18, 2016 (the "Hearing"), on the

First Tennessee Bank National Association's Motion to Dismiss Debtor's Complaint (the "Motion

to Dismiss") (Adv. Dkt. 5) [1] filed by First Tennessee Bank National Association ("First

Tennessee"), the Memorandum of Law in Support of First Tennessee Bank National Association's

Motion to Dismiss the Debtor's Complaint (the "First Tennessee Memo") (Adv. Dkt. 6), the

---

[1] The docket in the related bankruptcy proceeding, Case No. 13-01710-NPO (the "Bankruptcy Case") will be cited as "(Bankr. Dkt. ___)." The docket in the above-styled adversary proceeding (the "Adversary"), will be cited as "(Adv. Dkt ___)."

Answer and Response in Opposition to Motion to Dismiss Debtor's Complaint (the "Answer") (Adv. Dkt. 13) filed by the plaintiff, Kitchens Brothers Manufacturing Company ("Kitchens Brothers"), the Memorandum Brief in Support of Answer and Response in Opposition to Motion to Dismiss (the "Kitchens Brothers Memo") (Adv. Dkt. 14), and the First Tennessee Bank National Association's Reply Memorandum in Support of Motion to Dismiss Complaint (the "Reply") (Adv. Dkt. 15) filed by First Tennessee.   At the Hearing, Raymond Spencer Clift, III ("Clift") represented First Tennessee and Craig M. Geno ("Geno") represented Kitchens Brothers. After fully considering the matter, the Court finds as follows:[2]

## Jurisdiction

The Court has jurisdiction over the Adversary pursuant to 28 U.S.C. § 1334.   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Notice of the Motion to Dismiss was proper under the circumstances.

## Facts

The relevant background facts regarding Kitchens Brothers' and First Tennessee's relationship are not in dispute.   First Tennessee and Kitchens Brothers executed multiple loan and security agreements, promissory notes, and various security instruments (First Tennessee Memo Exs. A-N) (the "Loan Documents")[3] through which First Tennessee extended credit to Kitchens Brothers.   Throughout the course of their relationship, First Tennessee extended credit to Kitchens Brothers "on a line of credit series of transactions whereby [First Tennessee] advanced

---

[2]  The following constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

[3]  The Court will use the term "Loan Documents" to refer collectively to the documents attached to the First Tennessee Memo as Exhibits A-N.   Any specific loan document will be referred to by the exhibit number.

funds to [Kitchens Brothers] for operating costs and expenses based upon, and secured by, [Kitchens Brother's] 'available' accounts receivable and inventory." (Compl. at 2). First Tennessee also extended long-term credit to Kitchens Brothers "that was secured by, in large part, real estate and other collateral in connection with a much longer term transaction." (*Id.*).

After Kitchens Brothers defaulted, the parties entered into a series of loan extensions, modification, and forbearance agreements. (First Tennessee Memo at 3). The parties entered into a Forbearance and Modification Agreement (the "Forbearance Agreement") (First Tennessee Memo. Ex. G), which was subsequently amended nine (9) times. (First Tennessee Memo at 3). In the fall of 2012, First Tennessee "discovered that the Borrowing Base Certificates governing the asset based revolving credit facility included $3,000,000.00 of inventory that did not exist." (*Id.*). Kitchens Brothers then notified First Tennessee of its intent to liquidate collateral to satisfy its loan obligations and subsequently attempted to transfer title to assets to First Tennessee in satisfaction of its debt. (*Id.* at 4). First Tennessee declined this offer and Kitchens Brothers initiated the Bankruptcy Case. (*Id.*).

## I.    Bankruptcy Case

Kitchens Brothers initiated the Bankruptcy Case on May 30, 2013, by filing a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code (the "Petition") (Bankr. Dkt. 1). An evidentiary hearing was held on July 26, 2013 (the "July Hearing"), on the Motion to Terminate the Automatic Stay and Abandonment of Property of the Estate Pursuant to 11 U.S.C. §§ 362(d) and 554 (Bankr. Dkt. 45) filed by First Tennessee. After the July Hearing, the Court entered the Order Denying Motion for Relief from Automatic Stay and for Abandonment of Property of the Estate and Providing Adequate Protection to First Tennessee Bank National

Association (the "Adequate Protection Order") (Bankr. Dkt. 72), ordering that Kitchens Brothers'
assets be "marketed immediately."   (Adequate Protection Order at 2).   Pursuant to the Adequate
Protection Order, the parties were required to mutually agree upon a broker or qualified entity to
market and list Kitchens Brothers' assets.   (*Id.*).   The Court entered the Order Granting
Emergency Application to Employ Heritage Global, LLC, Jacqueline L. Kittrell Appraisers, Inc.
and for Expedited Hearing [78] & Sustaining Limited Objection to Application Filed by First
Tennessee Bank National Association [81] (Bankr. Dkt. 85).   Apparently, Kitchen Brothers was
disappointed with the outcome of the auction.   (Compl. at 5).

First Tennessee filed a proof of claim for $5,641,001.43 (Bankr. Claim No. 13-1) on
August 30, 2013.   First Tennessee subsequently filed an amended proof of claim (the "POC")
(Bankr. Claim No. 13-3) for the same amount on September 3, 2013.   The POC indicated that
First Tennessee executed a loan in favor of Kitchen Brothers, which is secured by real estate.
(POC at 1).   Kitchens Brothers filed the Objection to Claim and Counterclaim (the "Initial
Objection") (Bankr. Dkt. 408) on November 23, 2015.   In the Initial Objection, Kitchens Brothers
argued that: (1) First Tennessee's pre-petition refusal "to restructure and modify the existing
lending arrangement between the parties was a violation of its covenant[] of good faith and fair
dealing by its unjustified refusal to consent to [Kitchens Brothers'] restructuring/reorganization
plan."  (Initial Obj. at 3); (2) First Tennessee's auditors were negligent in failing to discover
Kitchens Brothers' overstatement of assets and values of the real estate collateral; (3) First
Tennessee violated the covenant of good faith and fair dealing by refusing to accept Kitchens
Brothers' deed of the real estate collateral in satisfaction of its debt; and (4) the POC should be
disallowed because First Tennessee violated its covenant of good faith and fair dealing and

committed negligence.   (Initial Obj. at 3-6).   It was apparently Kitchens Brothers' argument that if First Tennessee had accepted its proposal to deed the collateral in satisfaction of the debt, an auction would not have been necessary, and Kitchens Brothers would not have suffered a loss.

A hearing was held on December 8, 2015 (the "December Hearing"), on the Order and Notice for Hearing on First Amended Disclosure Statement (Bankr. Dkt. 387) and the Notice of Status Conference (Bankr. Dkt. 414) on the Initial Objection.   At the December Hearing, the parties agreed that the procedural posture of the Initial Objection was improper.   Clift argued that the issues raised in the Initial Objection should have been brought as an adversary proceeding. Geno stated that he planned to file a counterclaim or other pleading that the Court could convert to an adversary proceeding.   At the December Hearing, the Court ruled from the bench, giving Kitchens Brothers fourteen (14) days in which to file an adversary proceeding that included the contested matters raised in the Initial Objection.   Kitchens Brothers subsequently filed the First Amended Complaint and Objection to Claim on December 30, 2015 (the "Amended Objection") (Bankr. Dkt. 424), as a contested matter in the Bankruptcy Case.   The Amended Objection was substantively identical to the Initial Objection, the only difference being that it was styled as a "complaint."    A hearing was held on January 6, 2016, at which time the Court, from the bench, ordered Kitchens Brothers to file an adversary proceeding to raise the issues set forth in the Amended Objection.

On January 11, 2016, Kitchens Brothers filed the Amended Motion to Convert Contested Matter to an Adversary Proceeding (the "Motion to Convert") (Bankr. Dkt. 433).   In the Motion to Convert, Kitchens Brothers requested that the Amended Objection be converted into an adversary proceeding.   Kitchens Brothers "attempted to comply with the Court's directive by

filing an adversary proceeding against [First Tennessee] within the claim objection . . . ."   (Mot. to Convert at 1).   Kitchens Brothers indicated that it filed the Motion to Convert after the "Court directed that the contested matter be converted to an adversary proceeding . . . ."   (*Id.*).

First Tennessee filed the First Tennessee Bank National Association's Response & Objection to Amended Motion to Convert Contested Matter to an Adversary Proceeding (the "First Tennessee Objection to Motion to Convert") (Bankr. Dkt. 439) on January 19, 2016, requesting that Kitchens Brothers initiate an adversary proceeding in compliance with Federal Rule of Bankruptcy Procedure 3007(b).   (First Tennessee Obj. to Mot. to Convert at 4).   First Tennessee contended in the First Tennessee Objection to Motion to Convert that an objection to claim "commences a contested matter that is governed by Rule 9014; however, when the objection to claim is coupled with a counterclaim seeking to recover damages and affirmative relief from a creditor, the action must be commenced by the filing of an adversary proceeding under Part VII of the Bankruptcy Rules rather than a mere objection to claim."   (*Id.* at 2).   According to First Tennessee, Kitchens Brothers filed the Motion to Convert "[i]nstead of complying with this Court's Order and the Bankruptcy Rules."   (*Id.* at 3).   First Tennessee, therefore, requested that Kitchens Brothers "be required to commence a new adversary proceeding by filing the Complaint as an independent adversary proceeding."   (*Id.* at 4).

## II.   Adversary

Kitchens Brothers initiated the Adversary by filing the Complaint (the "Complaint") (Adv. Dkt. 1) on February 24, 2016.   The Complaint is substantively identical to the Amended Objection and alleges three (3) causes of action:

In Count I of the Complaint, Kitchens Brothers alleged that First Tennessee breached the

implied covenant of good faith and fair dealing by refusing to restructure and/or modify the Loan Documents, which resulted in Kitchens Brothers' inability to pay. (Compl. at 3). Kitchens Brothers also alleged that First Tennessee's "unjustified refusal" to consent to its reorganization plan caused "damages, lost profits and the destruction of a viable business." (*Id.*). Kitchens Brothers sought to offset First Tennessee's claims, and it sought "damages incurred by [Kitchens Brothers], together with all lawful interest thereon, and for a judgment against [First Tennessee] for damages, lost profits and other incidental and consequential damage incurred by [Kitchens Brothers] as a direct and proximate result of [First Tennessee's] actions and inactions." (*Id.* at 3-4).

In Count II of the Complaint, Kitchens Brothers asserted a claim for negligence, alleging that First Tennessee's auditor failed to discover that Kitchens Brothers' controller had overstated assets and values. (*Id.* at 4). According to the Complaint, First Tennessee performed collateral checks and audits of its collateral, and, prior to the filing of the Petition, Kitchens Brothers' controller "caused certain assets of [Kitchens Brothers] to be overstated, thereby presenting a false picture of [Kitchens Brothers'] financial status." (*Id.*). Kitchens Brothers alleged that as a result, it suffered damages that would have otherwise "been minimal and could have been controlled in a much earlier, more appropriate fashion." (*Id.*).

In Count III of the Complaint, Kitchens Brothers alleged that First Tennessee breached the covenant of good faith and fair dealing by declining to accept Kitchens Brothers' offer to deed all of First Tennessee's collateral to First Tennessee "free and clear of liens, claims and interest (with the exception of ad valorem property taxes) in exchange for full satisfaction of [First Tennessee's] claims." (*Id.* at 5). Kitchens Brothers claimed that the collateral was worth more than First

Tennessee's debt and that First Tennessee's unjustified refusal to accept the proposal "resulted in the Court requiring an auction to be conducted because the assets were idle at that point in time." (*Id*.).   According to Kitchens Brothers, the auction "was a complete and utter failure" and Kitchens Brothers suffered a loss as a result.   (*Id*.).   Although Kitchens Brothers admitted this loss "may not have been the direct fault of [First Tennessee], but for [First Tennessee's] wrongful refusal to accept the Plaintiff's deed in lieu of foreclosure proposal, an auction would not have been necessary, [First Tennessee] could have realized upon its collateral and there would be no deficiency and no litigation against [First Tennessee]."   (*Id*.).

## A.   Motion to Dismiss

In lieu of filing an answer to the Complaint, First Tennessee filed the Motion to Dismiss[4] and the First Tennessee Memo on March 23, 2016, arguing that Kitchens Brothers failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which is made applicable to the Adversary through Federal Rule of Bankruptcy Procedure 7012(b).   In the Motion to Dismiss, First Tennessee alleged that "as a matter of law, [Kitchens Brothers] failed to state any claim upon which relief may be granted."   (Mot. to Dismiss

---

[4] In the Answer, Kitchens Brothers argued that the Motion to Dismiss "is not in proper form because it is not in separate, numbered paragraphs as required by the rules."   (Answer at 1). Local Rule 7012-1 states that "Miss. L.R. 7056-1 for filing or responding to a motion for summary judgment shall also be applicable to a motion to dismiss."   MISS. BANKR. L.R. 7012-1(a).   Local Rule 7056-1 provides that if a movant bears the burden of proof, he or she is required to list and separately number each material fact.   MISS. BANKR. L.R. 7056-1.   On a motion to dismiss, the facts alleged in a complaint are presumed to be true.   *See Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breachers Litig.),* 495 F.3d 191, 205 (5th Cir. 2007) (finding that when deciding a motion to dismiss under Rule 12(b)(6), the "court accepts all 'well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).   Clearly, subsections 1 and 2 of Local Rule 7056-1 are unnecessary in pursuing or opposing a Rule 7012(b)(6) or Rule 7012(c) motion to dismiss.   Under Rule 7012(b)(6) and Rule 7012(c), the allegations of a complaint must be taken as true, and the presence of a genuine issue of material fact is irrelevant to that challenge.

at 1).   According to First Tennessee, the Complaint "is barred by the applicable statute of limitations, fails to state any claim upon which relief can be granted, and fails to allege facts which could establish the invalidity of First Tennessee's *prima facie* valid proof of claim," or entitle Kitchens Brothers to recover any damages.   (*Id.* at 2).   First Tennessee's arguments in support of its Motion to Dismiss are outlined below.

### 1.   Allegations in Complaint Are Time-Barred

In the Motion to Dismiss and in the First Tennessee Memo, First Tennessee argued that 11 U.S.C. § 546(a)[5] "prohibits any action to avoid a lien under Section 544 after the expiration of two (2) years from the entry of an order for relief."   (Mot. to Dismiss at 2; First Tennessee Memo at 9).   Citing § 301(b), First Tennessee claimed that the Petition constituted an order for relief. (*Id.*).   Because Kitchens Brothers filed the Petition on May 30, 2013, "in order to comply with the statute of limitations set forth in section 546(a), the Debtor had to assert any claim to invalidate, subordinate and/or avoid First Tennessee's security interest and secured claim on or before May 30, 2015."   (*Id.*).   According to First Tennessee, the Complaint is time-barred because Kitchens Brothers did not file it until February 24, 2016, "nearly 9 month[s] after the expiration of the applicable statute of limitations."   (*Id.*).

### 2.   Failure to State a Claim for Breach of Implied Covenant

Counts I and III of the Complaint allege that First Tennessee breached the covenant of good faith and fair dealing.   According to First Tennessee, "[a]s a threshold matter, Debtor cannot assert a stand-alone claim for breach of the covenant of good faith and fair dealing."   (*Id.* at 10) (citing *Bone v. CSX Intermodal, Inc.,* No. 01-2245V, 2001 WL 1906279, at *7 (W.D. Tenn. Oct.

---

[5]   Hereinafter, all code sections refer to the U.S. Bankruptcy Code found at title 11 of the U.S. Code unless otherwise noted.

11, 2001)).   Citing a line of Tennessee cases, First Tennessee reasoned that in order to state a claim for breach of the covenant of good faith and fair dealing, Kitchens Brothers must first establish a claim for breach of contract, which it failed to do. (*Id.*).   "Debtor has not alleged that First Tennessee breached any provisions of any contract or Loan Document. No obligation exists in the Loan Documents that required First Tennessee to restructure and modify the existing lending arrangement.   In fact, the Debtor explicitly acknowledged and agreed that no such obligation existed in the Loan Documents."   (*Id.* at 11) (First Tennessee Memo. Ex. G at 20, ¶ 11; Forbearance Agreement).[6]   Because Kitchens Brothers does not allege that First Tennessee breached any contract, First Tennessee argued that its claim "for breach of the covenant of good faith and fair dealing fails as a matter of law and must be dismissed."   (*Id.*).

First Tennessee further maintained that Counts I and III should be dismissed because "[t]he covenant of good faith and fair dealing only applies to performance of a contract; not its negotiation."   (*Id.*).   Accordingly, First Tennessee contended that its conduct "relating to the attempted workouts of the Loans cannot serve as the basis for a violation of the duty of good faith and fair dealing and should be dismissed with prejudice."   (*Id.* at 11-12).   First Tennessee argued that under Tennessee law, the duty of good faith and fair dealing is not breached when a party to a contract declines to renegotiate a contract.   (*Id.*).   First Tennessee claimed that it did not breach the written agreement and that declining to renegotiate did not constitute a breach of contract, and, therefore, "the Debtor's claim for breach of the duty of good faith and fair dealing must be dismissed."   (*Id.* at 12).

---

[6] The Forbearance Agreement provides that First Tennessee has no obligation to "extend any other or future forbearances except as expressly set forth herein."   (First Tennessee Memo Ex. G at 20, ¶ 11).   The Forbearance Agreement further provides that it does "not constitute a waiver by [First Tennessee] of any defaults under Loan Documents."   (*Id.*).

### 3.   Failure to State a Claim for Negligence

According to First Tennessee, Kitchens Brothers' negligence claim in Count II of the Complaint was an attempt "to shift the responsibility of the discovery of its own fraudulent activities to First Tennessee." (First Tennessee Memo. at 13). First Tennessee argued that Kitchens Brothers asserted a negligence claim against First Tennessee for failing to discover fraud that Kitchens Brothers itself perpetrated against First Tennessee. (*Id.*).

In the First Tennessee Memo, First Tennessee contended that it did not owe a duty to Kitchens Brothers because Tennessee law "does not 'impose fiduciary or similar duties on banks with respect to their customers, depositors, or borrowers absent special circumstances.'" (*Id.*) (quoting *Power & Tel. Supply Co., Inc. v. SunTrust Banks, Inc.,* 447 F.3d 923, 932 (6th Cir. 2006)). Under First Tennessee's interpretation of the law, "Tennessee law is clear that 'if the only source of duty between a particular plaintiff and defendant is their contract with each other, then a breach of that duty . . . will not support a negligence action.'" (*Id.* at 14) (citing *Thomas & Assoc., Inc. v. The Metro. Gov't of Nashville,* No. M2001-00757-COA-R3-CV, 2003 WL 21302974, at *6 (Tenn. Ct. App. June 6, 2003)). Because Kitchens Brothers and First Tennessee had a contract, First Tennessee argued that their obligations to each other arose out of the contract itself, and a violation results in a cause of action for breach of contract rather than negligence. (*Id.*).

In addition to First Tennessee's argument that it did not owe a duty to Kitchens Brothers, First Tennessee claimed that Kitchens Brothers is not a third party beneficiary of First Tennessee's audit reports. (*Id.* at 16). Apparently, First Tennessee produced audit reports of its collateral, which were "procured by First Tennessee for its own benefit" and it had no "obligation to make inspections for the benefit of [Kitchens Brothers] or any third parties." (*Id.*). According to First

Tennessee, Tennessee courts "presume that contracts are executed for the benefit of the parties to the contract and not for the sake or advantage of third parties." (*Id.*).

### B. Answer

Kitchens Brothers filed the Answer and the Kitchens Brothers Memo on April 21, 2016. In the Kitchens Brothers Memo, Kitchens Brothers argued that the Complaint is not time-barred because the causes of action in the Complaint do not fall within any of the categories covered by § 546(a). (Kitchens Brothers Memo at 2-3. According to Kitchens Brothers, the Complaint is not an effort to avoid the POC, but it is "a cause of action for breach of contract and negligence that may have the ultimate effect of reducing—or eliminating—First Tennessee's proof of claim, but it is not an attempt to 'avoid' anything (as in set aside)." (*Id.*).

Next, Kitchens Brothers claimed that Tennessee law, which the parties stipulated applies in the Adversary, imposes a duty of good faith and fair dealing in every contract. (*Id.* at 3-4). According to Kitchens Brothers, First Tennessee breached its duty when it "wrongfully rejected" Kitchens Brothers' efforts to restructure its indebtedness, even though it had engaged in the negotiation process. (*Id.* at 4). Also, First Tennessee requested a pre-petition liquidation proposal, which "was in the form of a deed in lieu of foreclosure from [Kitchens Brothers] to First Tennessee," which it then rejected. (*Id.*). Kitchens Brothers acknowledged that while the Loan Documents allow First Tennessee to foreclose upon and dispose of its collateral, "it is silent on [First Tennessee's] duty of good faith and fair dealing with respect to those transactions and how it should execute these steps." (*Id.* at 5). According to Kitchens Brothers, Tennessee law imposes the implied duty of good faith and fair dealing when a contract is silent regarding how the terms will be implemented. (*Id.*). "[F]ailure to consider a reasonable restructuring or liquidation

proposal (after the defendant invited the same and opened the door) was not a reasonable commercial practice" and failing to accept the deed in exchange for the debt or a reduction in the debt was also a breach of the duty of good faith and fair dealing, according to Kitchens Brothers. (*Id.* at 5-6). Citing the Tennessee Supreme Court Case of *Dick Broadcasting Co., Inc. of Tennessee v. Oak Ridge FM, Inc.,* 359 S.W.3d 653 (Tenn. 2013), Kitchens Brothers reasoned that even when a lessor retains the discretion to withhold consent to the assignment of a lease, that lessor is still required to exercise its discretion "in a manner consistent with good faith and fair dealing." (*Id.* at 7).

Kitchens Brothers also cited TENN. CODE ANN. § 47-9-504[7] and *In re Sandy Ridge Development Corp.*, 881 F.2d 1246 (5th Cir. 1989), arguing that First Tennessee failed to act in a commercially reasonable manner. (*Id.* at 8). According to Kitchens Brothers, *Sandy Ridge* "required a secured creditor to credit a mortgagor of collateral with a commercially reasonable credit, after the collateral was transferred to the secured creditor, giving the mortgagee the benefit of the doubt with respect to cost of foreclosure and related deductions." (*Id.* at 9).

**C. Reply**

First Tennessee filed the Reply on April 28, 2016. In the Reply, First Tennessee claimed that Kitchens Brothers' argument that First Tennessee wrongfully refused its offer to return the collateral in satisfaction of the debt "blindly and ignorantly disregard[s] the specific terms of the

---

[7] Throughout the Answer and the Reply, both parties cite TENN. CODE ANN. § 47-9-504. the parties are, however, citing to the former version of the statute. The Court will cite to the current, applicable version of the statute, TENN. CODE ANN. § 47-9-610, throughout the remainder of this Opinion.

Loan Documents and Deeds of Trust." (Reply at 7).[8] According to First Tennessee, the Loan Documents do not provide that First Tennessee is required to restructure or modify loans. (*Id.* at 4-5). "Based on the terms of the Loan Documents, First Tennessee retained sole, absolute, and unrestricted discretion to modify the Loan Documents." (*Id.* at 6). First Tennessee claimed that it was exercising this right when it rejected the liquidation plan and refused to accept the conveyance of the collateral in satisfaction of the debt. (*Id.*).

First Tennessee also argued in the Reply that Kitchens Brothers "refers to new allegations for the first time including that First Tennessee violated 'its obligation to act in a commercially reasonable [manner]" and "violated 'the principles in the Fifth Circuit case of *In re: Sandy Ridge Development Corp.*'" (Reply at 8). According to First Tennessee, Kitchens Brothers' "reference to these new claims should be ignored." (*Id.*). Nonetheless, First Tennessee maintained that it did not fail to act in a commercially reasonable manner by refusing to accept the deed of the collateral in satisfaction of the debt. (*Id.*). According to First Tennessee, the statute Kitchens Brothers alleged it violated pertains to the disposition of collateral and authorizes a secured party to "sell, lease, or otherwise dispose of any or all of the collateral." (*Id.* at 11) (citing Tenn. Code Ann. § 47-9-610). "First Tennessee cannot violate this statute when it neither sold the assets nor retained the assets as contemplated [by] the statute cited by [Kitchens Brothers]." (*Id.*). First Tennessee argued that it had no *Sandy Ridge* obligation because when it loaned money to Kitchens Brothers, it was bargaining for either payment of the debt or the right to foreclose on

---

[8] At the Hearing, it was apparent that Geno was offended by this comment. Here, claiming that opposing counsel is "blindly and ignorantly" making arguments for a client crosses the line of professional conduct. The Court recognizes, however, that this was an uncharacteristic moment of indiscretion by Clift. Such overzealous advocacy by Clift will not be tolerated in the future.

the real property, and the right to monetary claims against Kitchens Brothers for the deficiency balance.   (*Id.* at 11-12).

### D.  Hearing

At the Hearing, Clift argued that in order to state a claim upon which relief can be granted, Kitchens Brothers must submit facts showing the claim is plausible on its face, which it failed to do. Clift contended that under Tennessee law, there is no independent cause of action for breach of the covenant of good faith and fair dealing.   According to Clift, the Loan Documents granted First Tennessee the sole discretion to accept the collateral in satisfaction of the debt or not; therefore, it cannot be a breach of the covenant of good faith and fair dealing for First Tennessee to decline to accept the collateral pursuant to the contract.   Clift also claimed that Kitchens Brothers was attempting to place responsibility for its own fraudulent conduct on First Tennessee and that, if the Court does not dismiss the Complaint, it would be rewarding Kitchens Brothers for committing fraud.

According to Geno, the covenant of good faith and fair dealing is implied in every contract under Tennessee law, and First Tennessee breached the covenant by failing to negotiate.   Even though the contract does not speak to negotiations subsequent to contract formation, Geno argued that First Tennessee had an obligation to comply with the covenant of good faith and fair dealing by exercising commercial reasonableness.   According to Geno, even though the contract granted First Tennessee the authority to accept or reject a deed of the collateral in satisfaction of the debt, it is still required to act in good faith in compliance with Tennessee law.   Geno contended that Kitchens Brothers stated claims upon which relief can be granted because each cause of action alleged facts that would make the claims plausible, and according to Geno, First Tennessee

"admitted" that it did not have a justifiable reason to decline to accept the collateral in satisfaction of the debt.

The parties disagreed about the status of the Amended Objection and how it relates to the Adversary.   Geno contended that the Amended Objection is still pending in the Bankruptcy Case. According to Geno, the facts in the Complaint and the Amended Objection are the same, but they are separate matters.   Clift stated that Kitchens Brothers filed the Motion to Convert in the Bankruptcy Case and then filed the Complaint.   The Complaint and the Amended Objection are, therefore, merged in the Adversary, according to Clift.

### Discussion

In deciding whether to grant the Motion to Dismiss, the Court will first discuss the applicable substantive law and the procedural posture of the Adversary and the Bankruptcy Case before determining whether the statute of limitations bars the Complaint.   If the statute of limitations does not bar the Complaint, the Court will then decide whether Kitchens Brothers has stated any claims upon which relief can be granted so that the Complaint survives the Motion to Dismiss.

### I.  Tennessee Substantive Law Applies

The parties do not dispute that, as contemplated by the Loan Documents, substantive Tennessee law applies to the Adversary.   (First Tennessee Memo Ex. A at 29, ¶ 8.17).   Pursuant to the Loan Documents, the parties selected Tennessee law as the substantive state law governing their lending relationship, although Mississippi is the forum state for the Adversary.   The Supreme Court of the United States has held that a federal court sitting in diversity must apply the choice of law rules of the forum state in which it sits.   *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313

U.S. 487, 496 (1941). The Court's jurisdiction over the Adversary, however, arises out of 28 U.S.C. § 1334. The Court, therefore, "sits in federal question jurisdiction and not diversity jurisdiction." *In re Cyrus II P'ship,* 413 B.R. 609, 613 (Bankr. S.D. Tex. 2008).

Although the Court is not required to apply Mississippi choice of law rules, "bankruptcy courts generally apply the choice-of-law rules of the forum state when the state law claims at issue do not implicate important federal policies." *In re Everett,* 2014 WL 939371, at *3 (Bankr. W.D. La. Mar. 10, 2014) (citing *Woods-Tucker Leasing Corp. v. Hutcheson-Ingram Dev. Co.,* 642 F.2d 744, 748 (5th Cir. 1981)); *See In re Noram Res., Inc.,* 2011 WL 5357895, at *5 (Bankr. S.D. Tex. Nov. 7, 2011) (holding that "when bankruptcy courts adjudicate state-law claims that do not implicate federal policy, they may also apply the choice-of-law rules of the forum in which they sit.")). "[A] bankruptcy court, at the least, has discretion to apply state choice-of-law principles, and, in fact, is encouraged to do so where the rights and obligations of the parties are defined by state law." *Matter of Martin,* 532 B.R. 859, 864 n. 2 (Bankr. N.D. Ga. 2015) (citing *Woods-Tucker Leasing Corp.,* 642 F.2d at 748-49)). Because the Adversary involves state law causes of action for breach of the covenant of good faith and fair dealing and negligence, the Court finds that there is no compelling federal policy that requires the application of federal choice of law rules. Accordingly, the Court will apply Mississippi choice of law rules.

Mississippi courts have recognized that parties may bind themselves to a substantive choice of law provision as long as the state law selected bears a "reasonable relation" to the transaction. *B&G Gulf Coast Props., LLC v. Demo Diva, LLC,* Civil Action No. 1:10CV143-RHW, 2012 WL 1025725, at *2 (S.D. Miss. Mar. 26, 2012); *PIC Group, Inc. v. LandCoast Insulation, Inc.,* 718 F. Supp. 2d 795, 800 (S.D. Miss. 2010). The Fifth Circuit found

the following factors persuasive in determining that Mississippi substantive law bore a reasonable relation to the forum: the home office and corporate headquarters of the lender were in Mississippi, financing documents were sent to the Mississippi home office and were approved at the Mississippi office, and monthly payments were made to the Mississippi office. W*oods-Tucker Leasing Corp*, 642 F.2d 744 at 749-50. Similarly, in *Asbury MS Gray-Daniels, LLC v. Daniels,* the District Court for the Southern District of Mississippi found that a "reasonable relation" existed between the parties and New York where: the corporation conducted business from its New York office; the negotiations took place at the New York offices; the documents were drafted, reviewed, and revised by New York attorneys at their New York offices; and the corporation's directors approved the terms of the agreement in New York. 812 F. Supp. 2d 771, 778 (S.D. Miss. 2011).

The Court finds that the parties' transaction bears a "reasonable relation" to Tennessee so that the parties' choice of substantive Tennessee law should be enforced. Pursuant to First Tennessee's recitation of facts in the First Tennessee Memo, to which Kitchens Brothers agreed in the Answer, "First Tennessee's main office is located in Memphis, Tennessee, the Loan Documents were executed in Memphis, Tennessee, and all payments were made to First Tennessee at its main office in Memphis, Tennessee." (First Tennessee Memo at 8; Kitchens Brothers Memo at 2). These facts support a finding that Tennessee bears a reasonable relation to the transaction. Accordingly, the Court finds that Tennessee substantive law applies to the Adversary.

While Tennessee substantive law applies, the Court will continue to apply its own procedural rules to the Adversary. Pursuant to the Full Faith and Credit Clause of the United

States Constitution, courts are permitted to apply their own procedural rules to actions litigated in their courts, even if another state's substantive law applies.   *See Sun Oil Co. v. Wortman,* 486 U.S. 717, 722 (1988).   Accordingly, the Court will apply Tennessee substantive law and forum procedural law.

## II.       Procedural Posture

At the Hearing, Geno contended that although the Court ruled on the Motion to Convert in the Bankruptcy Case, the underlying Amended Objection is still pending.   Clift, however, argued that the Amended Objection was subsumed by the Adversary.

As the Court held in a case in the Northern District of Mississippi, "[a] proof of claim that is filed in accordance with the Rules 'constitute[s] prima facie evidence of the validity and amount of the [creditor's] claim.'"   *In re Walls,* 496 B.R. 818, 826 (Bankr. N.D. Miss. 2013) (citing FED. R. BANKR. P. 3001(f)).   Accordingly, a creditor's claim is deemed allowed under § 502(a) unless a party in interest objects.   *Id.*   Generally, "[t]he filing of an objection to a proof of claim initiates a contested matter governed by Rule 9014."   *Id.* (citing *I.R.S. v. Taylor (In re Taylor),* 132 F.3d 256, 260 (5th Cir. 1998)).   Pursuant to Federal Rule of Bankruptcy Procedure 3007(b) ("Rule 3007(b)"), however, "[a] party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding." FED. R. BANKR. P. 3007(b).

Kitchens Brothers complied with Rule 3007(b) by filing the Complaint, but the question of whether the Court must rule on the underlying Amended Objection remains.   Kitchens Brothers is authorized by Rule 3007(b) to raise its objection to the POC in the Adversary.   The Court, therefore, consolidates the Amended Objection filed in the Bankruptcy Case into the Adversary

and disposes of it in this Opinion.

### III.   Statute of Limitations Is Not a Bar

In the Motion to Dismiss, First Tennessee argued that the Complaint is time-barred because Kitchen Brothers failed to bring the Adversary within two (2) years from the entry of an order for relief as required by § 546(a).   Kitchens Brothers contended that it does not seek to avoid First Tennessee's lien in the Complaint.   According to Kitchens Brothers, the Complaint alleges breach of contract and negligence, which "may have the ultimate effect of reducing – or eliminating – First Tennessee's proof of claim, but it is not an attempt to 'avoid' anything (as in set aside)."   (Kitchens Brothers Memo at 2-3).

Pursuant to § 546(a), an action or proceeding under §§ 544, 545, 547, 548, or 553 must be brought within "2 years after the entry of the order for relief."   11 U.S.C. § 546(a)(1)(A).   While § 546(a) generally only applies to trustees exercising their avoidance power under § 544, "[t]he 'strong arm powers' may be exercised not only by trustees appointed under chapter 7 or 11 of the Code, but also by debtors in possession in chapter 11 cases and chapter 12 cases."   5 COLLIER ON BANKRUPTCY ¶ 544.07[1] (16th ed. 2016).   Therefore, § 546 "clearly applies to a debtor in possession in chapter 11 cases."   5 COLLIER ON BANKRUPTCY ¶ 546.02[1][c].   Section 546(a) limits the "*commencement* of the enumerated avoidance actions. Therefore, even if a [debtor in possession] is time-barred from commencing avoidance actions under section 546(a), the trustee may raise the avoidability of a transaction as a defense to claims or to the validity of liens asserted against the estate."   5 COLLIER ON BANKRUPTCY ¶ 546.02[1][d].

In the Complaint, Kitchens Brothers is not asserting a claim pursuant to § 544.   Instead, Kitchens Brothers has asserted state law claims for breach of the covenant of good faith and fair

dealing and negligence.   These are not avoidance actions pursuant to § 544.   They are state law claims asserted against First Tennessee that may have the effect, if Kitchens Brothers is ultimately successful, of reducing or eliminating the POC.   For the foregoing reasons, the Court finds that § 546(a) does not apply to the Adversary, and the statute of limitations in § 546(a) does not bar the Complaint.

## IV.   Complaint Fails to State a Claim

Pursuant to Rule 7008(a) of the Federal Rules of Bankruptcy Procedure ("Rule 7008"), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   A defendant can file a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012, for failure to state a claim upon which relief can be granted.   The Supreme Court has said that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matters, accepted as true, to 'state a claim for relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007)).   A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.*

In a complaint, "a 'naked assertion' of wrongdoing devoid of 'further factual enhancement' falls short of the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) [and Rule 7008(a)]."   *Howard v. ABN AMRO Mortg. Grp., Inc.*, No 1:13CV543-KS-MTP, 2014 WL 1237317, at *3 (S.D. Miss. Mar. 26, 2014) (quoting *Twombly*, 550 U.S. at 557)).   "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true."   *Twombly*, 550 U.S. at 555 (citations omitted); *see*

*Dixon v. Bay Fin., Inc., (In re Dixon),* No. 09-05009-NPO, 2010 WL 501547, at \*1 (Bankr. S.D. Miss. Feb. 5, 2010).   On the other hand, "when 'the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.'"   *Id.* (quoting *Cuvillier v. Taylor,* 503 F.3d 397, 401 (5th Cir. 2007)).   The Fifth Circuit Court of Appeals has held that "[w]here the complaint is devoid of facts that would put the defendant on notice as to what conduct supports the claims, the complaint fails to satisfy [the pleading requirements]."   *Anderson v. U.S. Dep't of Hous. & Urban Dev.,* 554 F.3d 525, 528 (5th Cir. 2008).   The Court will first address the claims for breach of the covenant of good faith and fair dealing before addressing the claim for negligence.

### A. Counts I and III: Breach of Implied Covenant

In Counts I and III of the Complaint, Kitchens Brothers alleged that First Tennessee breached the covenant of good faith and fair dealing by: (1) refusing Kitchens Brothers' pre-petition proposal to restructure and/or modify the parties' lending relationship, and (2) refusing to accept Kitchens Brothers' pre-petition proposal to deed First Tennessee all of its collateral in satisfaction of the debt.   First Tennessee argued that it was under no contractual obligation to accept either the proposed restructuring plan or modification, or the "dirt for debt" transaction.

Kitchens Brothers contended that First Tennessee's pre-petition refusal to accept its good faith restructuring plan "violat[ed] its covenant[] of good faith and fair dealing" and "not only created an indebtedness with [First Tennessee] that [Kitchens Brothers] could not pay, it resulted in damages, lost profits and the destruction of a viable business."   (Compl. at 3).   The Loan and

Security Agreement-Kitchens Brothers Manufacturing Company and Kitchens Brothers Investments, LLC (the "Loan Agreement") (Mot. to Dismiss Ex. A at 30, ¶ 8.23) provides, in pertinent part, that the termination date may be extended "in the sole and unrestricted discretion of [First Tennessee]," and that First Tennessee "shall be under no obligation whatsoever to extend the initial Termination Date, or to further extend any subsequent Termination Date to which the Lender has previously agreed in writing, any extensions of the initial or any subsequent Termination Date being in the sole and unrestricted judgment and discretion of [First Tennessee]." (Loan Agreement at 30, ¶ 8.23).

In determining whether Kitchens Brothers stated a claim for breach of the implied covenant of good faith and fair dealing that survives the Motion to Dismiss, the Court will first decide whether the implied covenant is applicable to the Loan Documents. The Court will then determine whether the implied covenant can be waived, and if so, whether the language in the Loan Documents successfully waived the implied covenant. Finally, the Court will decide whether Kitchens Brothers stated a claim for breach of the covenant of good faith and fair dealing.

### 1. Covenant of Good Faith and Fair Dealing Implied in Every Contract

According to the Tennessee Supreme Court, "[i]t is well-established that '[i]n Tennessee, the common law imposes a duty of good faith in the performance of contracts.'" *Dick Broad. Co., Inc. of Tenn.,* 395 S.W.3d at 660 (quoting *Wallace v. Nat'l Bank of Commerce,* 938 S.W.2d 684, 686 (Tenn. 1996)).[9] The Tennessee Supreme Court affirmed this holding in *Wallace,* ruling that

---

[9] As previously noted, Tennessee substantive law applies in the Adversary. The Court notes that Tennessee law regarding the implied covenant of good faith and fair dealing is consistent with Mississippi law. As this Court has previously held, "[e]very contract entered into in Mississippi contains an implied-in-law duty of good faith and fair dealing." *First Alliance Bank v. Miss. Valley Title Ins. Co.,* No. 10-00005-NPO, 2012 WL 3518575, at *14 (Bankr. S.D.

the duty of good faith and fair dealing "is implied *in every contract . . . and a person is presumed to know the law.*"   *Id.*   "Tennessee courts have consistently applied the principle that Tennessee law recognizes an implied covenant of good faith and fair dealing in every contract."   *Id.* at 661 (citing *Lamar Advert. Co. v. By-Pass Partners,* 313 S.W.3d 779, 791 (Tenn. Ct. App. 2009)).   The Tennessee Supreme Court in *Dick Broadcasting* also noted that parties to a contract are able to "contract for a standard of decision-making that is subject to a party's sole, absolute, unfettered discretion, allowing for the denial of consent for any reason, however arbitrary, or for no reason." *Id.* at 669 (citing *Wallace,* 938 S.W.2d at 686).   "To avoid the imposition of the implied covenant of good faith and fair dealing, the parties must explicitly state their intention to do so."   *Id.* (citation omitted).

Because the covenant of good faith and fair dealing is implied in every contract under Tennessee law, the covenant of good faith and fair dealing applies to the Loan Documents unless the parties explicitly contracted for a different standard.   The issue, therefore, is whether the contractual provisions in the Loan Documents explicitly waived the implied covenant of good faith and fair dealing.

### 2.   Parties Contracted for a Different Standard

First Tennessee argued that by retaining "sole, absolute, and unrestricted discretion to modify the Loan Documents," the parties waived the implied covenant of good faith and fair dealing.   (Reply at 6).   First Tennessee also reasoned that the fact that the Loan Documents address the mechanics as to how it can enforce its collection rights further indicates a waiver of the implied covenant of good faith and fair dealing.   Kitchens Brothers, on the other hand, claimed

---

Miss. July 12, 2012) (citations omitted).

that this language is not enough to explicitly waive the implied covenant of good faith and fair dealing.

In determining whether the parties to a contract agreed to a standard of conduct different than the implied covenant of good faith and fair dealing, "the court must examine the specific language of the contract at issue." *Schwartz v. Diagnostix Network Alliance, LLC,* No. M2014-00006-COA-R3-CV, 2014 WL 6453676, at *7 (Tenn. Ct. App. Nov. 17, 2014) (citations omitted). "A cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties." *Id.*, at *7 (quoting *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006)). "We can ascertain the intent of the parties from the ordinary meaning on the language used in the body of the contract. If the language in the contract is clear and unambiguous, the literal meaning of the contract language controls." *Id.* (citations omitted).

*Schwartz* involved a dispute over an employment contract that provided that the employee could be terminated "with or without cause." *Id.* The employee was terminated and sued the employer, arguing that the covenant of good faith and fair dealing applied. *Id.* The appeals court found that nothing in the parties' agreement suggested that the employer's right to fire the employee was restricted in any way. *Id.* "To hold that the covenant of good faith prevented [the employer] from exercising its right to terminate the contract *for any reason* would be contrary to the parties' clear intention, as evidenced by the agreement." *Id.* (emphasis added). Although the appeals court noted that the result may be harsh, "an unfortunate business outcome does not invalidate the parties' contractual structure." *Id.*, at *8. The employee entered into the contract knowing that the agreement could be terminated at will and "waived any claims against [the employer] for expenses he incurred in his performance." *Id.*

The Court finds that the parties' bargained-for, arms-length contract included language giving First Tennessee the unrestricted discretion either to extend the termination date of the Loan Agreement, or not.  This contractual provision provides the standard that governs the parties' relationship regarding the modification or extension of the loan.  Pursuant to the Loan Agreement, First Tennessee was under no obligation to modify or extend the Loan Agreement. Further, at least one of the parties' forbearance and modification agreements contained a provision explicitly providing that First Tennessee "is not obligated and does not agree to extend any other or future forbearances."  (First Tennessee Memo Ex. G at 20, ¶ 11).

Similar to the employer in *Schwartz,* First Tennessee retained unfettered discretion to either modify the terms of the agreement, or not.   This standard also applies to First Tennessee's decision to reject Kitchens Brothers' proposal to convey the collateral in satisfaction of the debt. First Tennessee was exercising its contractually bargained-for right to decline to modify the terms of the contract.  The Court will not read language into the Loan Documents that would prevent First Tennessee from exercising its bargained-for right to decline to extend or modify the Loan Agreement.  Accordingly, the implied covenant of good faith and fair dealing did not apply to First Tennessee's decision to reject Kitchens Brothers' "dirt for debt proposal."  Because the implied covenant of good faith and fair dealing is inapplicable to the Loan Agreement, Kitchens Brothers failed to state a claim upon which relief can be granted in Counts I and III of the Complaint.

### 3.  No Underlying Breach of Contract Claim

Even if the Court did find that the implied covenant of good faith and fair dealing applied to the Loan Agreement, Kitchens Brothers still did not state a claim upon which relief can be

granted.   The duty of good faith and fair dealing "does not extend beyond the terms of the contract and the reasonable expectations of the parties under the contract," and it "does not create additional contractual rights or obligations, and it cannot be used to avoid or alter the terms of an agreement."   *Cadence Bank, N.A. v. The Alpha Trust,* 473 S.W.3d 756, 769 (Tenn. Ct. App. 2015) (citations omitted).

The purpose of the implied covenant is "(1) to honor the reasonable expectations of the contracting parties and (2) to protect the rights of the parties to receive the benefits of the agreement into which they entered."   *Id.* (citation omitted).   In considering the plain language of the parties' contract in *Cadence Bank*, the appellate court found that the contract did not obligate the bank "to perpetually refinance the debt or forever extend the maturation date of the balloon payment."   *Id.* at 771.   The contract in that case provided that the bank could "amend, modify, alter, extend, renew or otherwise change" the terms, conditions, etc., contained in the contract "as the Lender may require."   *Id.*   According to the appellate court, there was "nothing in the parties' written contract that indicates that Cadence Bank has a duty to refinance the debt . . . . " *Id.*   "This Court cannot impose the implied duty of good faith and fair dealing in such a way as to add new obligations."   *Id.* at 772 (citation omitted).   The appellate court also held that "to hold that Cadence Bank's alleged actions in failing to refinance the parties' debt were in violation of the duty of good faith and fair dealing implied in the written contract would 'circumvent or alter the specific terms of the parties' agreement.'"   *Id.* (quoting *Dick Broad. Co.,* 395 S.W.3d at 665).

Nothing in the Loan Agreement required First Tennessee to renegotiate or workout the parties' agreement.   In fact, the Loan Agreement provided that First Tennessee had no obligation to extend the termination date of the Loan Agreement, and that it may decline to do so at its

discretion.   Similarly, nothing in the Loan Agreement obligated First Tennessee to accept a deed of its collateral in satisfaction of its debt.   Therefore, First Tennessee's decision not to extend the Loan Agreement, restructure or modify the lending arrangement, or accept the deed of its collateral in satisfaction of its debt, was not a breach of the covenant of good faith and fair dealing. The parties' only obligation was to act in good faith pursuant to the express terms of the Loan Agreement, which gave First Tennessee unfettered discretion.   Assuming all of the allegations in the Complaint are true, Kitchens Brothers has not stated a claim for breach of the covenant of good faith and fair dealing because First Tennessee acted pursuant to the rights granted to it by the Loan Documents.   Accordingly, the Court finds that Kitchens Brothers failed to state a claim upon which relief can be granted, and Counts I and III of the Complaint should be dismissed.

### B.  Count II: Negligence

In Count II of the Complaint, Kitchens Brothers alleged that First Tennessee is liable for damages because it failed to discover that Kitchens Brothers' controller "caused certain assets of [Kitchens Brothers] to be overstated, thereby presenting a false picture of [Kitchens Brothers'] financial status."  (Compl. at 4).   According to Kitchens Brothers, First Tennessee periodically "performed collateral checks or audits of its collateral" in connection with the lending transaction, and its "auditors' failure to discover the overstatement of assets and values was negligent under the circumstances.  [Kitchens Brothers] was a third party beneficiary of the auditor's reports and action."  (*Id.*).

First Tennessee argued in the Motion to Dismiss, the First Tennessee Memo, and the Reply that it is not responsible for Kitchens Brothers' agent's misrepresentation of asset values, or the fact that Kitchens Brothers provided "false and misleading information to First Tennessee

regarding the Debtor's financial condition."  (First Tennessee Memo at 13).  First Tennessee claimed that it did not owe a duty to Kitchens Brothers under Tennessee law, which means it cannot be liable for negligence, because the parties are bound by the terms of their contractual agreement and Kitchens Brothers does not allege a breach of contract.  (*Id.* at 15).  According to First Tennessee, Kitchens Brothers also fails to qualify as a third party beneficiary of its audit reports.  (*Id.* at 16).

The elements for a negligence claim under Tennessee law are: (1) duty; (2) breach; (3) injury or loss; (4) cause in fact; and (5) legal or proximate cause.  *Williams v. Wal-Mart Stores East, L.P.,* 832 F. Supp. 2d 923 (E.D. Tenn. 2011) (citing *Lett v. Collis Foods, Inc.,* 60 S.W.3d 95, 99 (Tenn. Ct. App. 2001)).  Because the duty element is at issue in the Adversary, the Court will first determine whether First Tennessee owed a duty to Kitchens Brothers so that Kitchens Brothers stated a claim for negligence.  Next, the Court will determine whether Kitchens Brothers was a third party beneficiary to First Tennessee's audit reports, which could also make First Tennessee liable for negligence.

### 1.  First Tennessee Did Not Owe a Duty to Kitchens Brothers

In order to determine whether Kitchens Brothers stated a claim upon which relief can be granted in Count II of the Complaint, the Court must determine whether First Tennessee owed a duty to Kitchens Brothers.  If First Tennessee did not owe a duty to Kitchens Brothers, it cannot be held liable for negligence.  On a motion to dismiss the Court will assume the allegations in the complaint are true and it must determine "whether upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of others-or, more simply, whether the interest of the plaintiff which has suffered invasion was

entitled to legal protection at the hands of the defendant." *Bradshaw v. Daniel,* 854 S.W.2d 865, 869-70 (Tenn. 1993) (quotation omitted).   If the Court finds that First Tennessee owed no duty to Kitchens Brothers, it "must necessarily result in judgment for the defendant." *Id.*

The Sixth Circuit Court of Appeals has recognized that Tennessee common law "generally does not impose a fiduciary duty or similar duties on banks with respect to their customers, depositors, or borrowers absent special circumstances." *Power & Tel. Supply Co., Inc.,* 447 F.3d at 932 (citing *Glazer v. First Am. Nat'l Bank,* 930 S.W.2d 546, 550 (Tenn. 1996); *Oak Ridge Precision Indus., Inc. v. First Tenn. Bank Nat'l Ass'n,* 835 S.W.2d 25, 30 n.2 (Tenn. Ct. App. 1992)).   "This rests on the recognition that bank-depositor or debtor-creditor relationships generally involve arm's-length dealings." *Id.*   Tennessee courts have also held that "if the only source of duty between a particular plaintiff and defendant is their contract with each other, then a breach of that duty, without more, ordinarily will not support a negligence action." *Thomas & Assocs., Inc.,* 2003 WL 21302974, at *6 (citation omitted).   Accordingly, when "two parties enter into a contractual arrangement, their obligations to each other generally arise only out of the contract itself," and "if the only source of duty between a particular plaintiff and defendant is their contract with each other, then a breach of that duty, without more, ordinarily will not support a negligence action." *Permobil, Inc. v. Am. Exp. Travel Related Servs. Co.,* 571 F. Supp. 2d 826, 852 (M.D. Tenn. 2008) (quoting *Thomas & Assocs.,* 2003 WL 21302974, at *6).

In *Power & Telephone Supply Co.,* the borrower asserted a claim for negligence against the lender, arguing that, as a matter of law, it had a duty to exercise reasonable care.   *Power & Tel. Supply Co.,* 447 F.3d at 932.   The borrower argued that the general professional negligence standard, as it applies to medical practice cases, should apply to the lender because they "held

themselves out to be 'market professionals' and 'financial advisors' . . . ."   *Id.* at 933.   Relying on Tennessee common law, which generally does not impose a fiduciary duty on banks with respect to their customers or borrowers, the Sixth Circuit held that the borrower failed to demonstrate that the lender owed it a legal duty.   *Id.*

Similarly, the district court in *Vaughter v. BAC Home Loans Servicing, LP* held that a financial institution did not owe a duty of care to the plaintiff with respect to their mortgage loan. No. 3:11-CV-00776, 2012 WL 162398, at *5 (M.D. Tenn. Jan. 19, 2012).   "[T]he standard Tennessee rule that financial institutions do not have a common law duty of care with respect to 'customers, depositors, or borrowers' applies to this case."   *Id.* (citing *Permobil, Inc.,* 571 F. Supp. 2d at 842) (citing *Power & Tel. Supply Co.,* 447 F.3d at 932).   Because the plaintiff in that case could not establish that the financial institution owed them a duty of care, the district court granted the motion to dismiss as it pertained to the negligence claim.   *Id.*; *see also Glazer,* 930 S.W.2d at 550 (holding that a borrower failed to state a claim for negligence because he did not prove that the lender had some contractual or other legal duty to cooperate with the lender's investigation into employees' conduct).

In consideration of the foregoing law, the Court finds that Kitchens Brothers has not met its burden to prove that First Tennessee owed it a duty of care.   Tennessee law does not impose a duty of care upon a lender in regard to borrowers.   Kitchens Brothers alleged no facts showing that First Tennessee had a duty to discover that Kitchens Brothers' own agents were overstating assets.   Accordingly, Kitchens Brothers is unable to make a *prima facie* case for negligence because First Tennessee did not owe Kitchens Brothers a duty of care.

## 2.   Kitchens Brothers Was Not a Third Party Beneficiary

In Count II of the Complaint, Kitchens Brothers asserts that it "was a third party beneficiary of the auditor's reports and action."   (Compl. at 4).   This is the only reference Kitchens Brothers has made to its alleged status as a third party beneficiary.   It would appear that Kitchens Brothers believes that being a third party beneficiary of First Tennessee's audit reports means that First Tennessee is liable for the damage caused by its failure to discover the overstatement of assets and values.

First Tennessee argued in the First Tennessee Memo that the "audit reports are procured by First Tennessee for its own benefit," and that it had no obligation to conduct audits or inspections to benefit Kitchens Brothers.   (First Tennessee Memo at 16).   First Tennessee had an interest in its collateral and the value of its collateral; therefore, it conducted periodic audits and inspections of its collateral.   (*Id.*).   According to First Tennessee, "[n]othing in the Loan Documents requires First Tennessee to provide an audit report to [Kitchens Brothers]."   (*Id.*).   Kitchens Brothers does not contest this fact, and after reviewing the Loan Documents, the Court was unable to identify any provision that requires First Tennessee to conduct inspections or provide audit reports to *any* third party.

Under Tennessee law, "third parties may enforce a contract if they are intended beneficiaries of the contract."   *Owner-Operator Indep. Drivers Ass'n v. Concord EFS, Inc.,* 59 S.W.3d 63, 68 (Tenn. 2001) (citations omitted).   If "the benefit flowing to the third party is not intended, but is merely incidental, the third party acquires no right to enforce the contract."   *Id.* (citation omitted).   Two elements must be met in order for a third party to prove that it is the intended beneficiary: "(1) a valid contract made upon sufficient consideration between the

principal parties and (2) the clear intent to have the contract operate for the benefit of a third party." *Id.* at 68-69 (quoting *First Tenn. Bank Nat'l Ass'n v. Thoroughbred Motor Cars, Inc.,* 932 S.W.2d 928, 930 (Tenn. Ct. App.1996) (citation omitted)).   The third party must prove "that the contract was made and entered into directly or primarily for the benefit of such third person . . . ." *Id.* at 69 (quoting *Abraham v. Knoxville Tel., Inc.,* 757 S.W.2d 8, 11 (Tenn. Ct. App. 1988)).

Kitchens Brothers has presented no evidence in an attempt to satisfy its burden of proving that the audit reports were conducted primarily for its benefit.   In fact, Kitchens Brothers has identified no contractual language at all that requires First Tennessee to conduct inspections or prepare audit reports.   Accordingly, Kitchens Brothers has not stated a claim upon which relief can be granted in regard to its alleged status as a third party beneficiary.   Because First Tennessee did not have a duty to discover that Kitchens Brothers' agents overstated its assets, and because Kitchens Brothers did not allege facts that would prove it was a third party beneficiary of First Tennessee's audit reports, Count II of the Complaint should be dismissed.

## C.  New Claims Asserted in the Kitchens Brothers Memo Are Not Properly Before the Court

In the Kitchens Brothers Memo, Kitchens Brothers claimed for the first time that First Tennessee violated TENN. CODE ANN. § 47-9-610 when it failed to act in a commercially reasonable manner.  (Kitchens Brothers Memo at 2, 8, 10, 11).   Kitchens Brothers also alleged for the first time that First Tennessee failed to act in a commercially reasonable manner in violation of *In re Sandy Ridge.*   (*Id*).   First Tennessee claimed that because Kitchens Brothers did not assert these claims in the Complaint, they are not properly before the Court, and the Court should dismiss those claims.   (Reply at 8).

Federal Rule of Civil Procedure 15(a), which is made applicable in the Adversary pursuant

to Federal Rule of Bankruptcy Procedure 7015, provides that a court should "freely give leave [to amend a complaint] when justice so requires." FED. R. CIV. P. 15(a)(2).   A party seeking to amend a complaint must "expressly request" leave to do so.   *Law v. Ocwen Loan Servicing, LLC,* 587 F. App'x 790, 796 (5th Cir. 2014) (citing *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.,* 336 F.3d 375, 387 (5th Cir. 2003)).   A party does not have to request leave to amend in a formal motion, but "[a] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)."   *Id.* (citation and quotation omitted). Accordingly, the decision of whether or not to grant leave to amend "is left to the sound discretion of the district court and will only be reversed on appeal when that discretion has been abused." *Willard,* 336 F.3d at 387 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321 (1971)).

In *Law*, the plaintiff's response to the defendant's motion to dismiss contained new factual allegations, but "contained no language that might be construed as a request for leave to amend his complaint, let alone *express* language requesting leave and indicating the particular grounds on which the amendment was sought."   *Law*, 587 F. App'x at 796.   Accordingly, the Fifth Circuit found that the plaintiff did not request leave to amend his complaint.   *Id.* Similarly, in *Willard*, the Fifth Circuit affirmed the district court's denial of the plaintiff's request to amend his complaint, in part, because the plaintiff did not "expressly request with particularity the opportunity to amend his complaint for the third time."   *Willard*, 336 F.3d at 387.   Importantly, as the Court is doing in this Opinion, the district court in *McClaine v. Boeing Co. sua sponte* considered whether to grant the plaintiff leave to amend.   544 F. App'x 474, 477-78 (5th Cir. 2013).   "The district court's

unsolicited discussion of whether to invite a plaintiff to move to amend is distinctly different from a plaintiff's actual request for, and argument in favor of, such relief." *Id.* at 478. Also, within the Fifth Circuit, it is the practice of courts "to refuse to consider arguments raised for the first time in reply briefs." *Gillaspy v. Dall. Indep. Sch. Dist.,* 278 Fed. Appx. 307, 315 (5th Cir. 2008); *See U.S. v. Barnes,* 126 F.Supp.3d 735, 744-45 n. 63 (E.D. La. 2015).

In the Adversary, Kitchens Brothers raised the allegation that First Tennessee failed to act in a commercially reasonable manner for the first time in the Kitchens Brothers Memo. Because the Court only considers the allegations in the Complaint in considering the Motion to Dismiss, the new allegations are not properly before the Court. Additionally, nothing in the pleadings can be construed as a request for leave to amend. Kitchen Brothers simply asserted new allegations against First Tennessee without expressing its intent or desire to amend the Complaint. At this juncture, the Court finds that it would be inappropriate to grant Kitchen Brothers leave to amend the Complaint to include a claim that First Tennessee failed to act in a commercially reasonable manner.

## V.    Amended Objection is Denied

As the Court previously noted, the Amended Objection filed in the Bankruptcy Case is consolidated into the Adversary. The Amended Objection argued that the POC should be disallowed for the same reasons alleged in Counts I, II, and III of the Complaint. The Court has determined that the Complaint should be dismissed in its entirety because Kitchens Brothers failed to state a claim upon which relief can be granted. Accordingly, the Court finds that the Amended Objection should be denied.

**Conclusion**

The Court finds that although the covenant of good faith and fair dealing is implied in every contract under Tennessee law, the parties to a contract are free to contract for a different standard of conduct governing a party's performance.   Pursuant to the Loan Documents, Kitchens Brothers and First Tennessee agreed that First Tennessee would have the sole and unrestricted discretion to modify or restructure the terms of the Loan Documents.   This express language created a standard other than the standard of good faith and fair dealing imposed by common law. Because First Tennessee exercised its discretion pursuant to the Loan Agreement, Kitchens Brothers is unable to state a claim for breach of the covenant of good faith and fair dealing, and Counts I and III of the Complaint should be dismissed.

Additionally, First Tennessee did not have a duty under Tennessee law to discover that Kitchens Brothers' agent misrepresented the value of collateral.   The source of the parties' duty is the Loan Documents, and nothing in the Loan Documents required First Tennessee to inspect or discover that Kitchens Brothers was providing false information.   Additionally, even though First Tennessee employed an auditor to inspect its collateral periodically, Kitchens Brothers was not a third party beneficiary of those audit reports.   Because First Tennessee did not owe Kitchens Brothers a duty to discover Kitchens Brothers' misrepresentations, and because Kitchens Brothers was not a third party beneficiary to First Tennessee's audit reports, Kitchens Brothers cannot state a claim for negligence upon which relief can be granted.   Accordingly, Count II of the Complaint should be dismissed.

Kitchens Brothers first alleged that First Tennessee did not in a commercially reasonable manner in the Kitchens Brothers Memo.   Pursuant to Federal Rule of Civil Procedure 15(a) and

Federal Rule of Bankruptcy Procedure 7015, it would be inappropriate to allow Kitchen Brothers to amend the Complaint.  Because the Court finds that Counts I, II, and III of the Complaint should be dismissed and that Kitchen Brothers should not be granted leave to amend, the Adversary should be dismissed in its entirety.   For the foregoing reasons, the Amended Objection filed in the Bankruptcy Case, which is consolidated into the Adversary, should be denied.

The Court will enter a separate final judgment in accordance with Rules 7054 and 9021 of the Federal Rules of Bankruptcy Procedure.

**##END OF OPINION##**